UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>(1) PHALENTZ VERNOT,<br>(2) SELBY OKAI,<br>(3) YVES BISSAINTHE,<br>(4) MARVIN KIMANI,<br>(5) KEITH WAINAINA, and<br>(6) VICTOR KOLAWOLE,<br><br>Defendants | Criminal No. 25cr10317<br><br>Violations:<br><br>Count One: Conspiracy to Commit Bank Fraud<br>(18 U.S.C. § 1349)<br><br>Counts Two-Seven: Bank Fraud; Aiding and Abetting<br>(18 U.S.C. §§ 1344 and 2)<br><br>Count Eight: Conspiracy to Commit Money Laundering<br>(18 U.S.C. § 1956(h))<br><br>Count Nine: Aggravated Identity Theft<br>(18 U.S.C. § 1028A(a)(1))<br><br>Bank Fraud Forfeiture Allegation:<br>(18 U.S.C. § 982(a)(2))<br><br>Money Laundering Forfeiture Allegation:<br>(18 U.S.C. § 982(a)(1)) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

1.    Defendants PHALENTZ VERNOT, SELBY OKAI, YVES BISSAINTHE, MARVIN KIMANI, KEITH WAINAINA, and VICTOR KOLAWOLE lived in Massachusetts.

2.    Citizens Bank, Chase Bank, TD Bank, Bank of America, and Santander Bank (collectively, "the Banks") were financial institutions that held deposits insured by the Federal Deposit Insurance Corporation.

3.    Teller-1 worked at a Chase Bank branch in Massachusetts.

1

4.      Co-Conspirator 1 ("CC-1") and Co-Conspirator 2 ("CC-2") lived in Massachusetts.

<u>Overview of the Bank Fraud Conspiracy and the Scheme to Defraud</u>

5.      Beginning no later than in or about December 2022 and continuing through the present, VERNOT, OKAI, BISSAINTHE, KIMANI, WAINAINA, and KOLAWOLE conspired with one another and with others known and unknown to the Grand Jury to defraud the Banks by using imposters to pose as bona fide bank customers and purchase Cashier's checks drawn on those customers' accounts, which were then deposited into accounts the defendants and their coconspirators controlled.

<u>Object and Purpose of the Bank Fraud Conspiracy</u>

6.      The object of the conspiracy was to commit bank fraud, in violation of Title 18, United States Code, Section 1344.  The principal purpose of the conspiracy and the scheme to defraud was to enrich the conspirators and to conceal the scheme from the Banks, their customers, and law enforcement.

<u>Manner and Means of the Bank Fraud Conspiracy and Scheme to Defraud</u>

7.      Among the manner and means by which VERNOT, OKAI, BISSAINTHE, KIMANI, WAINAINA, and KOLAWOLE and coconspirators known and unknown to the Grand Jury carried out the conspiracy and the scheme to defraud were the following:

        a.      Illicitly obtaining names, dates of birth, Social Security numbers, and bank account numbers of Bank customers;

        b.      Recruiting individuals to pose as those customers;

        c.      Procuring fake identification documents with the customers' names but the imposters' photos;

d.      Sending the imposters into Bank branches to pose as the customers;

e.      Causing the imposters to withdraw large sums from the customers' bank accounts in the form of Cashier's checks;

f.      Depositing those Cashier's checks into accounts they controlled;

g.      Recruiting bank insiders to facilitate the withdrawals without alerting customers or the Banks; and

h.      Communicating regarding the recruitment of imposters and bank insiders, purchase of fake identifications, availability of funds in victim accounts, amounts to withdraw, and other matters related to the scheme.

<u>Acts in Furtherance of the Bank Fraud Conspiracy and the Scheme to Defraud</u>

8.      On various dates beginning no later than in or about December 2022 through the present, VERNOT, OKAI, BISSAINTHE, KIMANI, WAINAINA, and KOLAWOLE and others known and unknown to the Grand Jury committed and caused to be committed the following acts, among others, in furtherance of the bank fraud conspiracy and scheme to defraud:

a.      On or about December 5, 2022, an imposter posing as Citizens Bank customer M.E. entered a Citizens Bank branch in Groton, Connecticut and purchased a $45,000 Cashier's check drawn on M.E.'s account with an account number ending in 0268 and made out to "Private Members Realty LLC."

b.      On or about December 5, 2022, WAINAINA deposited the $45,000 Cashier's check drawn on M.E.'s 0268 account into a Chase Bank account with an account number ending in 1125 in the name of Private Members Realty LLC.

c.      On or about December 15, 2022, an imposter posing as Citizens Bank customer V.W. entered a Citizens Bank branch in Groton, Connecticut and purchased a $90,000

Cashier's check drawn on V.W.'s account with an account number ending in 8389 and made out to "30Dat LLC." The imposter presented a fake driver's license purporting to be V.W.'s driver's license.

          d.        On or about December 15, 2022, KOLAWOLE deposited the $90,000 Cashier's check drawn on V.W.'s 8389 account into a Chase Bank account with an account number ending in 7055 in the name of 30Dat LLC.

          e.        On or before May 23, 2023, BISSAINTHE recruited Teller-1 to the scheme.

          f.        On or about May 24, 2023, BISSAINTHE told VERNOT via text message that, in substance, BISSAINTHE would bring an imposter to the Chase Bank branch where Teller-1 worked.

          g.        On or about May 24, 2023, VERNOT responded to BISSAINTHE that, in substance, VERNOT would give BISSAINTHE the fake identification with the victim's identifying information but the imposter's photo.

          h.        On or about June 8, 2023, BISSAINTHE created a group chat on WhatsApp with BISSAINTHE, VERNOT, and Teller-1.

          i.        On or about June 8, 2023, at VERNOT and BISSAINTHE's direction, Teller-1 updated a Chase Bank customer's email address on file with the bank to prevent the customer from receiving account notifications.

          j.        On or about May 10, 2024, an imposter posing as Citizens Bank customer R.D. entered a Citizens Bank branch in Wellesley, Massachusetts and purchased a $50,000 Cashier's check drawn on R.D.'s account with an account number ending in 6176 and made out to "Yves Elite Transport LLC."

k.      On or about May 10, 2024, BISSAINTHE deposited the $50,000 Cashier's check drawn on R.D.'s 6176 account into a TD Bank account with an account number ending in 0464 in the name of Yves Elite Transport LLC at an ATM in Boston.

l.      On or about May 11, 2024, KIMANI, via text message, told VERNOT, in substance, that KIMANI would give cash to WAINAINA to reimburse VERNOT for the money VERNOT had lent KIMANI to open an account at Chase Bank in the name of KIMANI's fake company.

m.      On or about July 10, 2024, OKAI notified VERNOT, via text message, that, in substance, he had recruited two white females to pose as bank customers and sent VERNOT a photo of one of the women.

n.      On or about July 17, 2024, OKAI notified VERNOT, via text message, that, in substance, he had recruited a white male to pose as a bank customer.

o.      On or about July 17, 2024, VERNOT responded to OKAI, that, in substance, VERNOT had already ordered fake identifications for the individuals OKAI had recruited earlier to the scheme, including identifications in the names of five different victims for one of the women OKAI had recruited.

p.      On or about August 7, 2024, OKAI exchanged text messages with VERNOT in which, in substance, OKAI reported that he was going to pick up a female imposter that OKAI had recruited to conduct a transaction in a victim account.

q.      On or about August 7, 2024, an imposter posing as Citizens Bank customer E.L. entered a Citizens Bank branch in Franklin, Massachusetts and purchased a $60,000 Cashier's check drawn on E.L.'s account with an account number ending in 1987 and made out to "Smooth Creations Hair Salon LLC."

r.      On or about August 7, 2024, CC-1 deposited the $60,000 Cashier's check drawn on E.L.'s 1987 account into a Chase Bank account with an account number ending in 8132 in the name of Smooth Creations Hair Salon LLC.

s.      On or about August 9, 2024, OKAI exchanged text messages with VERNOT in which, in substance, VERNOT instructed OKAI to bring only himself and the imposter to the bank and told OKAI that a bank insider was stopping the alert sent to customers for any withdrawal over $10,000.

t.      On or about August 9, 2024, the imposter, who had previously posed as Citizens Bank customer E.L., again entered a Citizens Bank branch in Franklin, Massachusetts and purchased a $56,000 Cashier's check drawn on E.L.'s 1987 account and made out to "Trinity Luxury Collection LLC."

u.      On or about August 9, 2024, VERNOT deposited the $56,000 Cashier's check drawn on E.L.'s 1987 account into a Bank of America account with an account number ending in 3707 in the name of Trinity Luxury Collection LLC.

v.      On or about August 23, 2024, VERNOT and KOLAWOLE exchanged text messages in which, in substance, KOLAWOLE agreed to meet an associate of VERNOT at a Chase Bank branch in Braintree, Massachusetts to receive a Cashier's check for KOLAWOLE to deposit into his bank account.

w.      On or about August 31, 2024, VERNOT asked OKAI, via text message, whether, in substance, OKAI or his associate had sent an imposter's photo to BISSAINTHE to use on a fake identification.

x.     On or before September 13, 2024, VERNOT caused a fake Massachusetts driver's license in the name of Citizens Bank customer Y.L but with the photo of an imposter to be created.

y.     On or about September 16, 2024 an imposter posing as Citizens Bank customer Y.L. entered a Citizens Bank branch in Brookline, Massachusetts and purchased a $67,000 Cashier's check drawn on Y.L.'s account with an account number ending in 8167 and made out to "Elite Estates Properties LLC."

z.     On or about September 16, 2024, KIMANI deposited the $67,000 Cashier's check drawn on Y.L.'s 8167 account into a Chase Bank account with an account number ending in 7771 in the name of Elite Estates Properties LLC.

Overview of the Money Laundering Conspiracy

9.     Beginning no later than in or about December 2022 and continuing through the present, VERNOT, OKAI, BISSAINTHE, KIMANI, WAINAINA, and KOLAWOLE conspired with one another and with others known and unknown to the Grand Jury to receive and withdraw the proceeds of bank fraud from bank accounts they controlled, to deposit some of those proceeds—usually in amounts greater than $10,000—into other bank accounts they controlled, to convert some of the proceeds to cash, and to pay some of the proceeds to imposters and bank insiders, in an effort to conceal that the funds were the proceeds of criminal activity and to promote the carrying on of the bank fraud scheme.

Manner and Means of the Money Laundering Conspiracy

10.    Among the manner and means by which VERNOT, OKAI, BISSAINTHE, KIMANI, WAINAINA, and KOLAWOLE and coconspirators known and unknown to the Grand Jury carried out the conspiracy were the following:

a.      Opening bank accounts in the names of fake businesses or using legitimate bank accounts to receive bank fraud scheme proceeds ("the receiving accounts");

b.      Monitoring the receiving accounts to determine when bank fraud proceeds became available for withdrawal;

c.      Withdrawing money quickly from the receiving accounts by purchasing Cashier's checks, making ATM withdrawals, transferring funds electronically, or conducting another financial transaction, before the Banks discovered the fraud;

d.      Depositing money withdrawn from the receiving accounts into other bank accounts conspirators controlled to conceal the source of the funds;

e.      Cashing checks funded with victim funds at check cashing businesses;

f.      Paying some of the funds to the imposters and bank insiders so they would continue to participate in the bank fraud scheme; and

g.      Communicating regarding the availability and movement of the bank fraud proceeds, the payment of imposters and bank insiders, and other matters related to the money laundering scheme.

<u>Acts in Furtherance of the Money Laundering Conspiracy</u>

11.      On various dates beginning no later than in or about December 2022 through the present, VERNOT, OKAI, BISSAINTHE, KIMANI, WAINAINA, and KOLAWOLE and others known and unknown to the Grand Jury committed and caused to be committed the following acts, among others, in furtherance of the money laundering conspiracy:

a.      On or about December 6, 2022, WAINAINA, using funds from the $45,000 Cashier's check drawn on M.E.'s 0268 account, purchased a $35,000 Cashier's check made out to VERNOT.

b.    On or about December 6, 2022, VERNOT deposited the $35,000 Cashier's check into a TD Bank account in VERNOT's name with an account number ending in 1050 at a TD Bank branch in Boston.

c.    On or about December 24, 2022, KOLAWOLE, using funds from the $90,000 Cashier's check drawn on V.W.'s 8389 account, purchased a $45,000 Cashier's check made out to "First Class Exotics Realty LLC."

d.    On or about December 24, 2022, VERNOT deposited the $45,000 Cashier's check into a TD Bank account VERNOT controlled in the name of First Class Exotics Realty with an account number ending in 6004 at a TD Bank ATM in Boston.

e.    On or about October 30, 2023, VERNOT, in substance, instructed KOLAWOLE via text message to keep an eye on KOLAWOLE's account at Chase Bank and report back when a Cashier's check deposited into the account had cleared and, once cleared, for KOLAWOLE to purchase a Cashier's check made out to First Class Exotics Realty.

f.    On or about June 14, 2024, VERNOT, in substance, told KOLAWOLE, via text message, that KOLAWOLE would receive $12,000 to $20,000 per week for laundering funds through KOLAWOLE's 30Dat LLC business bank account.

g.    On or about July 8, 2024, BISSAINTHE attempted to cash a Cashier's check drawn on a victim account at a check cashing business in Massachusetts.

h.    On or about August 16, 2024, CC-1, using funds from the $60,000 Cashier's check drawn on E.L.'s 1987 account, purchased a $53,000 Cashier's check made out to "First Class Exotics Realty LLC."

i.      On or about August 17, 2024, VERNOT texted CC-2 and instructed CC-2, in substance, to withdraw a total of $50,000 from victim funds deposited into a bank account CC-2 controlled because VERNOT needed "to pay other workers."

j.      On or about August 17, 2024, VERNOT texted OKAI screenshots of a text exchange VERNOT had with KIMANI, in which KIMANI and VERNOT discussed, in substance, whether victim funds deposited into an account KIMANI controlled had cleared.  VERNOT further told OKAI, in substance, that VERNOT was able to cash another check and "pay my people."

k.      On or about August 17, 2024, VERNOT texted OKAI and asked, in substance, whether VERNOT should pay OKAI and an imposter OKAI had recruited, or whether VERNOT should pay OKAI for both, and OKAI would pass on funds to the imposter.

l.      On or about August 17, 2024, OKAI responded, in substance, that VERNOT could pay OKAI, and OKAI would pay the imposter.   OKAI explained that he would "throw her some [money] then keep her happy."

m.      On or about August 17, 2024, VERNOT told OKAI, via text message, that, in substance, OKAI should pay the imposter "so she stay happy" in order to keep her interested in doing bigger withdrawals.

n.      On or about August 21, 2024, VERNOT told OKAI, via text message, that, in substance, the imposter was backing down because OKAI had not paid her.   VERNOT further told OKAI, in substance, that OKAI needed to pay a different imposter enough so that the imposter would not back down after VERNOT had purchased four different fake identifications using this imposter's photo.

o.      On or about August 31, 2024, VERNOT texted OKAI, in substance, that VERNOT had two envelopes for OKAI, one with funds for OKAI and the other with funds for an imposter OKAI had recruited.   VERNOT explained that the money for the imposter was "not a lot but enough to make her get back to work."

p.      On or about September 4, 2024, VERNOT and KOLAWOLE exchanged text messages in which, in substance, VERNOT agreed to meet KOLAWOLE at a shopping center in Boston so KOLAWOLE could deliver a $50,000 Cashier's check and $2,000 in cash to VERNOT.

q.      On or about September 18, 2024, KIMANI, using funds from the $67,000 Cashier's check drawn on Y.L.'s 8167 account, purchased a $50,000 Cashier's check made out to "First Class Exotics Realty LLC."

r.      On or about September 18, 2024, VERNOT texted BISSAINTHE screenshots of text messages VERNOT had exchanged with an insider at a check cashing business, in which the insider notified VERNOT, in substance, that VERNOT was cleared to cash checks under $50,000, but that BISSAINTHE would have difficulty.

s.      On or about September 20, 2024, VERNOT, in substance, instructed BISSAINTHE, via text message, to cause an imposter to purchase a Cashier's check made out to KIMANI or another associate of BISSAINTHE's, because KOLAWOLE was not available.

COUNT ONE
Conspiracy to Commit Bank Fraud
(18 U.S.C. § 1349)

The Grand Jury charges:

12.     The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 11 of this Indictment.

13.     From in or about December 2022 through the present, in the District of Massachusetts, District of Connecticut, and elsewhere, the defendants,

|       |       |
|-------|-------|
| (1)   | PHALENTZ VERNOT,       |
| (2)   | SELBY OKAI,            |
| (3)   | YVES BISSAINTHE       |
| (4)   | MARVIN KIMANI,        |
| (5)   | KEITH WAINAINA, and   |
| (6)   | VICTOR KOLAWOLE,      |

conspired with each other and with others known and unknown to the Grand Jury to commit bank fraud, that is, to knowingly execute, and attempt to execute, a scheme and artifice to defraud a financial institution, that is, Citizens Bank, Chase Bank, TD Bank, Bank of America, and Santander Bank, and to obtain moneys, funds, credits, assets, securities and other property owned by and under the custody and control of Citizens Bank, Chase Bank, TD Bank, Bank of America, and Santander Bank, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Section 1349.

COUNTS TWO THROUGH SEVEN
Bank Fraud; Aiding and Abetting
(18 U.S.C. §§ 1344 and 2)

The Grand Jury further charges:

14.    The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 11 of this Indictment.

15.    On or about the dates below, in the District of Massachusetts, and elsewhere, the defendants set forth below, knowingly executed, and attempted to execute, a scheme and artifice to defraud a financial institution, that is, the banks identified below, and to obtain moneys, funds, credits, assets, securities and other property owned by and under the custody and control of the banks identified below, by means of materially false and fraudulent pretenses, representations, and promises, to wit:

| Count | Defendant | Approximate Date | Transaction |
|-------|-----------|------------------|-------------|
| 2 | (1) PHALENTZ VERNOT | September 16, 2024 | Purchase of $67,000 Cashier's check drawn on Citizens Bank account with an account number ending in 8167 |
| 3 | (2) SELBY OKAI | August 7, 2024 | Purchase of $60,000 Cashier's check drawn on Citizens Bank account with an account number ending in 1987 |
| 4 | (3) YVES BISSAINTHE | May 10, 2024 | Deposit of $50,000 Cashier's check into a TD Bank account with an account number ending in 0464 |
| 5 | (4) MARVIN KIMANI | September 16, 2024 | Deposit of $67,000 Cashier's check into Chase Bank account with an account number ending in 7771 |
| 6 | (5) KEITH WAINAINA | December 6, 2022 | Deposit of $45,000 Cashier's check into Chase Bank account with an account number ending in 1125 |
| 7 | (6) VICTOR KOLAWOLE | December 15, 2022 | Deposit of $90,000 Cashier's check into Chase Bank account with an account number ending in 7055 |

All in violation of Title 18, United States Code, Sections 1344 and 2.

COUNT EIGHT
Money Laundering Conspiracy
(18 U.S.C. § 1956(h))

The Grand Jury further charges:

16.     The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 11 of this Indictment.

17.     From in or about December 2022 through the present, in the District of Massachusetts, and elsewhere, the defendants,

(1)     PHALENTZ VERNOT,
(2)     SELBY OKAI,
(3)     YVES BISSAINTHE
(4)     MARVIN KIMANI,
(5)     KEITH WAINAINA, and
(6)     VICTOR KOLAWOLE,

conspired with each other and with others known and unknown to the Grand Jury to:

(a) conduct and attempt to conduct financial transactions, to wit, deposits and withdrawals from accounts at financial institutions, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, and which in fact involved the proceeds of specified unlawful activity, that is, bank fraud, in violation of 18 U.S.C. § 1344, with the intent to promote the carrying on of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

(b) conduct and attempt to conduct financial transactions, to wit, deposits and withdrawals from accounts at financial institutions, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, and which in fact involved the proceeds of specified unlawful activity, that is, bank fraud, in violation of 18 U.S.C. § 1344, and knowing that the transactions were designed, in

whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(c) knowingly engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000, that is, Cashier's checks, where such property was derived from specified unlawful activity, that is, bank fraud, in violation of 18 U.S.C. § 1344, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

<u>COUNT NINE</u>
Aggravated Identity Theft
(18 U.S.C. § 1028A(a)(1))

The Grand Jury further charges:

18.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-11 of this Indictment.

19.     On or about September 16, 2024, in the District of Massachusetts, and elsewhere, the defendant,

(1)     PHALENTZ VERNOT,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, namely, the name and account number of Y.L, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), namely, bank fraud, in violation of Title 18, United States Code, Section 1344, as charged in Count Two.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

## BANK FRAUD FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(2))

20.    Upon conviction of one or more of the offenses in violation of Title 18, United

States Code, Sections 1344 and 1349, set forth in Counts One through Seven, the defendants,

      (1)    PHALENTZ VERNOT,
      (2)    SELBY OKAI,
      (3)    YVES BISSAINTHE
      (4)    MARVIN KIMANI,
      (5)    KEITH WAINAINA, and
      (6)    VICTOR KOLAWOLE,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C),

and Title 28, United States Code, Section 2461(c), any property, real or personal, which

constitutes or is derived from proceeds traceable to the offenses.

21.    If any of the property described in Paragraph 20, above, as being forfeitable

pursuant to Title 18, United States Code, Section 982(a)(2), as a result of any act or omission of

the defendant --

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without
       difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property

of the defendant up to the value of the property described in Paragraph 20 above.

All pursuant to Title 18, United States Code, Section 982(a)(2).

## MONEY LAUNDERING FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(1))

22.    Upon conviction of the offense in violation of Title 18, United States Code, Section

1956(h), set forth in Count Eight, the defendants,

(1)    PHALENTZ VERNOT,
(2)    SELBY OKAI,
(3)    YVES BISSAINTHE
(4)    MARVIN KIMANI,
(5)    KEITH WAINAINA, and
(6)    VICTOR KOLAWOLE,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any

property, real or personal, involved in such offense, and any property traceable to such property.

23.    If any of the property described in Paragraph 22, above, as being forfeitable

pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of

the defendant --

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without
      difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property

of the defendant up to the value of the property described in Paragraph 22 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL

_____
FOREPERSON


_____
KRISTEN A. KEARNEY
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS


District of Massachusetts: JULY __24__, 2025
Returned into the District Court by the Grand Jurors and filed.


                    /s/ Noreen A. Russo
                    _____
                    DEPUTY CLERK     at 12:30 PM


19